UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| NATIONWIDE AFFINITY INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:16CV298 ACL |
| JAMES DEIMUND and MARY DEIMUND, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Nationwide Affinity Insurance Company of America's ("Nationwide") Motion for Partial Summary Judgment. (Doc. 39.) The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). For the following reasons, the Court will deny Nationwide's Motion.

**Background[1]**

On December 29, 2016, Nationwide filed a Complaint for Declaratory Judgment, seeking a determination of its rights and obligations under a policy of insurance that was issued to Defendants James and Mary Deimund ("Deimunds"), policy number HOA 0019933591-8 ("Policy"). (Doc. 1.) On or about January 19, 2016, the Deimunds' house and personal property

---

[1]The Court's recitation of the facts is taken from facts that (1) the Deimunds admitted were undisputed in their Response; (2) the Deimunds alleged were disputed but failed to properly and/or directly controvert; (3) Nationwide admitted in its Response to the Deimunds' Statement of Additional Material Facts; or (4) Nationwide alleged were disputed but failed to controvert. The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion with specific references to portions of the record as required by Local Rule 4.01(E) and Federal Rule of Civil Procedure 56(c)(1).

1

located at 11394 Billings Road, Ste. Genevieve, Missouri 63670-7131 sustained damages as a result of a fire.

At the time of the fire, Mary Deimund was reportedly at work several miles from the home, and James Deimund was a few blocks away at a friend's home. The Deimunds' adult son, Sheldon Deimund, was home when the fire started. There is no evidence or allegation that anyone else was at the home when the fire started. The Deimunds claim the fire was accidental and started near or around the fire place. Neither the canine team nor the laboratory testing of samples from the scene revealed any evidence of an accelerant. No public agency investigated the fire.

The Deimunds submitted a claim to Nationwide for insurance proceeds under the Policy. On December 28, 2016, Nationwide filed the instant Complaint for Declaratory Judgment, in which it alleges that the Deimunds are barred from recovery under the Policy due to the application of two Policy provisions. Nationwide first alleges that an exclusion precluding coverage for intentional loss applies because Nationwide's investigation of the claim has led to a reasonable belief that the Deimunds, or someone at their direction, started the fire. This provision provides as follows, in relevant part:

> SECTION I-EXCLUSIONS
>
> \*\*\*
>
> A.    We do not insure for loss caused directly or indirectly by any of the following…
>
> \*\*\*
>
> 8.    Intentional Loss
>
>     a.    Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss. In the event of such loss, no "insured" is entitled to coverage, even

>           "insureds" who did not commit or conspire to commit the act causing the loss.

(Doc. 1-1 at 13, 41.)

Nationwide next argues that there is no coverage under the Policy because the Deimunds breached the "concealment or fraud" condition, in that they concealed and/or misrepresented material facts with respect to the cause of the claimed loss. The relevant provision provides as follows:

> Q. Concealment or Fraud
>
> We provide coverage to no "insured" under this policy if, whether before or after a loss, an "insured" has:
>
> 1. Intentionally concealed or misrepresented any material fact or circumstance;
>
> 2. Engaged in fraudulent conduct; or
>
> 3. Made false statements;
>
> relating to this insurance.

(Doc. 1-1 at 44-45.)

In response to Nationwide's Complaint, the Deimunds filed an Answer and Counterclaim for breach of contract and vexatious refusal to pay. (Doc. 14.) They assert that Nationwide's failure to make full[2] payment for the Deimunds' loss sustained in the fire in accordance with the terms of the Policy is in breach of the contract for insurance between Nationwide and the Deimunds. The Deimunds assert that they have followed all instructions and fulfilled their duties and obligations under the Policy, but were still subject to unnecessary delay, harassment, and unreasonable behavior on the part of Nationwide. They contend that Nationwide engaged in

---

[2] It is undisputed that Nationwide made advance payments to the Deimunds in the amounts of $4000 for personal property, and $21,089.60 for additional living expenses.

this recalcitrant behavior in order to coerce the Deimunds to accept something less than adequate value for their loss. The Deimunds allege that Nationwide's refusal to make payment in accordance with the terms and provisions of the Policy was vexatious and without reasonable cause or excuse.

Nationwide now moves for partial summary judgment on the Deimunds' counter-claim for vexatious refusal to pay.

**Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir.1988). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted).

**Discussion**

Nationwide argues that it is entitled to summary judgment on the Deimunds' claim for vexatious refusal to pay because the undisputed facts establish that Nationwide had a reasonable basis for allegedly refusing payment on the Deimunds' claim for damages under the Policy. Nationwide further argues that, "at a minimum, there is an open question of fact as to whether the Deimunds' claimed loss is covered by the policy as alleged by the Deimunds." (Doc. 39 at

4

1.) As a result, Nationwide contends that it "had and has a right to contest liability to the Deimunds under the policy and insist upon a judicial determination of the open questions of fact and law regarding the cause of the fire at the Deimunds' property and coverage available under the subject policy, without being penalized under the vexatious refusal statute." *Id.*

The Deimunds respond that, while Nationwide may file a declaratory judgment action to determine its obligations under the Policy, the filing of such a complaint does not terminate Nationwide's obligation to deal fairly and reasonably with the Deimunds. They contend that they have submitted sufficient evidence to support their vexatious refusal claim, which requires the denial of Nationwide's Motion.

"Missouri law provides that an insured may recover penalties and attorney fees when an insurer denies a claim without reasonable cause or excuse." *United Fire & Cas. Co. v. Historic Pres. Trust*, 265 F.3d 722, 729 (8th Cir. 2001); *see* Mo. Rev. Stat. §§ 375.296, 375.420. "These statutes are penal in nature and narrowly construed; their purpose is to deter the insurer from vexatiously refusing to pay 'after becoming aware it has no meritorious defense' to the insured's claim." *State of Missouri ex rel. Pemiscot County, Mo. v. W. Sur. Co.*, 51 F.3d 170, 174 (8th Cir. 1995) (quoting Mo. Rev. Stat. § 375.420).

"To support a claim of vexatious refusal to pay proceeds of an insurance policy, the insured must show the insurer's refusal to pay is willful and without reasonable cause, as the facts would appear to a reasonable and prudent person." *Mears v. Columbia Mut. Ins. Co.*, 855 S.W.2d 389, 394 (Mo. Ct. App. 1993). "When there is an open question of law or fact, the insurer may insist upon a judicial determination of those questions without being penalized." *Joachim Sav. & Loan Ass'n v. State Farm Fire & Cas. Co.*, 764 S.W.2d 648, 651 (Mo. Ct. App. 1988). "The existence of a litigable factual or legal issue, however, 'does not preclude a

5

vexatious penalty where there is evidence the insurer's attitude was vexatious and recalcitrant.'" *JAM Inc. v. Nautilus Ins. Co.*, 128 S.W.3d 879, 898 (Mo. Ct. App. 2004) (quoting *DeWitt v. Am. Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. 1984) (en banc)).

"Generally, whether an insurer acted reasonably is a question of fact for the jury, and thus is improper for a court to determine in granting a summary judgment." *May & May Trucking, L.L.C. v. Progressive Nw. Ins. Co.*, 429 S.W.3d 511, 516 (Mo. Ct. App. 2014). "However, in cases in which the underlying facts are undisputed, that question of fact becomes a question of law for the court to properly decide." *Id.* at 516-17.

Nationwide contends that there is an open question of fact regarding whether the Deimunds intentionally caused or conspired to cause the fire, and that it reasonably relied on the opinions of its experts in proceeding with the present declaratory judgment action. Nationwide retained an origin and cause investigator, Philip Noah of Rimkus Consulting Group, Inc., to assist in determining the origin and cause of the fire. Following his inspection of the property, Mr. Noah expressed the opinion that "[t]he fire originated in three separate and unconnected areas of fire origin inside the structure." (Doc. 41-5 at p. 4.) He found that, "[a]lthough unrecovered and not conclusively identified, the probable source of the fire's ignition was the intentional application of open flame to combustible items available in the [origin areas]." *Id.* Mr. Noah concluded that the "classification of the fire's cause is Incendiary." *Id.* Nationwide also retained electrical engineer Will Truss with Schaefer Engineering, Inc., to evaluate the electrical system and determine what impact if any it had on the fire. Mr. Truss conducted an inspection of the property on February 1, 2016. He found as follows: (1) no electrical system deficiency existed that could have caused three simultaneous unconnected fires within the dwelling; (2) no evidence of a competent electrical ignition source was present within the area of

fire origin within the northwest corner of the basement crawlspace; (3) no evidence of a competent electrical ignition source was present within the area of fire origin within the northeast corner of the basement crawlspace; and (4) based on the above, the electrical system had no role in the ignition of the fire loss. (Doc. 41-7 at p. 3.)

The Deimunds first challenge Nationwide's experts' opinions. They note that Mr. Truss acknowledged that there could be a connection between the electrical system and the fire in Area 3. The Deimunds state that Mr. Truss simply accepted the conclusions of Mr. Noah that there were three separate fires and then concluded that the possible electrical connection to the fire in Area 3 could not explain separate fires in Areas 1 and 2. They contend that Mr. Truss' opinion provides no support for Nationwide's position that the fire was incendiary, but rather, only supports the proposition that the fire was not caused by an electrical condition. The Deimunds also argue that Nationwide ignores the report and deposition testimony of Ronald F. Gronemeyer, an origin and cause expert hired by the Deimunds to evaluate Mr. Noah's report. They further state that, in his January 25, 2018 report, Mr. Gronemeyer was very critical of Mr. Noah's investigation and report.

Nationwide responds that, although the parties dispute the cause of the fire, the existence of this question of fact does not preclude summary judgment but instead entitles Nationwide to summary judgment on the vexatious refusal claims. Nationwide contends that Defendants' claim for vexatious refusal fails as a matter of law because Nationwide's declaratory judgment action expressly seeks a determination as to the cause of the fire and resulting impact on coverage under the Policy, and it should not be penalized under the vexatious refusal statute for such.

The record demonstrates, and the parties admit, that genuine issues of fact exist regarding the cause and origin of the fire. The Deimund's expert's report, completed after the instant

action was filed, does not establish that Nationwide's reliance on Mr. Noah's opinions was unreasonable at the time. A finding that Nationwide has a meritorious defense does not, however, entitle Nationwide to summary judgment on the Deimunds' vexatious refusal claim.

As previously noted, the existence of a litigable issue does not necessarily preclude a penalty for vexatious delay if there is evidence that the insurer's attitude was vexatious and recalcitrant. *DeWitt*, 667 S.W.2d at 710. In *DeWitt*, the Missouri Supreme Court wrote:

> The existence of a litigable issue, either factual or legal, does not preclude a vexatious penalty where there is evidence the insurer's attitude was vexatious and recalcitrant. Direct and specific evidence to show vexatious refusal is not required[;] the jury may find vexatious [delay] upon a general survey and consideration of the whole testimony and all the facts and circumstances in connection with the case.

*Id.* (citations omitted). "This language from *Dewitt* has been characterized as having relaxed the standard necessary to support a vexatiousness award." *Russell v. Farmers & Merchs. Ins. Co.,* 834 S.W.2d 209, 221 (Mo. Ct. App. 1992) (citations omitted).

The Court next considers whether the Deimunds have presented sufficient evidence that Nationwide's attitude was vexatious and recalcitrant in handling the claim. On this issue, the Deimunds first argue that Nationwide's investigation was inadequate for the following reasons: Nationwide has not provided any motive for James, Mary, or Sheldon to intentionally start the fire; Nationwide failed to confirm James' alibi; Nationwide failed to determine if there might be a connection between the fire in the Deimunds' home and other fires in the community; and Nationwide did not provide statements from James, Mary, and Sheldon Deimund to Mr. Noah prior to the preparation and submission of his report. The Deimunds also contend that Nationwide failed to meaningfully communicate with the Deimunds, and did not inform them of its finding that the fire was incendiary until the filing of the instant action.

8

With regard to its investigation, Nationwide responds that it is not required to provide an explanation as to the Deimunds' motive to start the fire. Nationwide states that the undisputed facts reveal that James Deimund never offered an alibi prior to the filing of this action; rather, he testified under oath that he was by himself at a friend's garage. (Doc. 41-10 at p. 39.) Nationwide contends that Mr. Deimund may not contradict prior testimony with an affidavit to create a question of fact to preclude summary judgment. Nationwide argues that its failure to investigate other fires in the area was not unreasonable as there was no evidence a third party was at the Deimunds' home when the fire started. As to the alleged lack of communication with the Deimunds, Nationwide argues that a vexatious refusal claim requires the lack of a reasonable cause or excuse for the failure to make payment and is not based on the insurer's communications with the insured. Nationwide further argues that the Deimunds' claim is negated by the testimony of Nationwide claim manager Mark Unterschutz.

Missouri courts have found that the "very character of a vexatious refusal to pay case makes it hard to define what factual mix must be present to make a jury issue," and that "each case literally must be decided on its own merits." *Hopkins v. Am. Econ. Ins. Co.*, 896 S.W.2d 933, 941 (Mo. Ct. App. 1995) (citing *Irelan v. Standard Mut. Asso.,* 379 S.W.2d 815, 821 (Mo. Ct. App. 1964)). The purpose of the action is to provide relief to someone "who, in the vernacular, has been 'horsed around' by his or her insurance carrier, after the insured has requested payment under the contract of insurance." *Hopkins*, 896 S.W.2d at 941. Vexatious refusal claims have been recognized for a number of reasons. *See Two Branch Marina, Inc. v. W. Heritage Ins. Co.*, No. 4:07CV1017CDP, 2008 WL 2952747, at *5 (E.D. Mo. July 29, 2008) (collecting cases). Among those reasons are: (1) the refusal is based upon a suspicion, rather than a reasonable inference of established facts, *Laster v. State Farm Fire & Cas. Co.*, 693

S.W.2d 195, 197 (Mo. Ct. App. 1985); (2) the insurer failed to follow its own policies, *Smith ex rel. Stephan v. A F & L Ins. Co.*, 147 S.W.3d 767, 778-79 (Mo. Ct. App. 2004); (3) there is no explanation for the refusal to pay, *Allen v. State Farm Mut. Auto, Ins. Co.*, 753 S.W.2d 616, 620-21 (Mo. Ct. App. 1988); (4) there is an extended period of time with no activity after the insurer completed the investigation, *Victor v. Manhattan Life Ins. Co.*, 772 S.W.2d 826, 831-33 (Mo. Ct. App. 1989); (5) the insurer delayed significantly in contacting the insured and performed an inadequate investigation, *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 2007 WL 2990459, at * 12-13 (Mo. Ct. App. Oct. 16, 2007); and (6) the insurer relied on an inadequate expert opinion, *Pace Properties v. American Mfrs*, 918 S.W.2d 883, 888 (Mo. Ct. App. 1996).

The Court finds that, while there is a dispute of fact concerning the cause and origin of the fire in this case, there is also a substantial dispute of fact about the reasonableness of Nationwide's investigation of the Deimunds' claim.[3] Nationwide admits that Mr. Noah was retained within days of the fire, and concluded no later than mid-February 2016 that he believed the fire was incendiary in nature. Despite being aware of this finding, Nationwide did not advise the Deimunds of this conclusion until the filing of its Complaint on December 28, 2016. Even then, the Complaint does not specifically cite the opinions of Mr. Noah. The Deimunds argue that a jury could reasonably determine that Nationwide intentionally refused to advise the Deimunds of Mr. Noah's conclusion in order to prevent the Deimunds from obtaining the assistance of counsel and their own expert while Nationwide attempted to support its suspicion that the Deimunds were involved with the setting of the fire.

Contrary to Nationwide's argument, Mr. Unterschutz's testimony does not refute the Deimunds' claims. Mr. Unterschutz testified that the Deimunds were never advised in writing

---

[3] In making this finding, the Court did not consider James Deimund's Affidavit in which he discloses for the first time an alibi witness.

that Nationwide believed that the fire was intentionally set prior to the instant action, nor that it was suspected they were involved in the setting of the fire. (Doc. 46-2 at p. 16.) Mr. Unterschutz stated that Nationwide "kept constant contact with the Deimunds informing them of the current status of the investigation…," yet he admitted that neither he nor any other employee of Nationwide ever informed the Deimunds that Nationwide believed the fire had been intentionally set. *Id.* at p. 16-17. Mr. Unterschutz did not provide the Deimunds with any information regarding the substance of the investigation, but only advised them that the investigation was ongoing. Mr. Unterschutz also testified at his deposition that Nationwide did not deny the Deimunds' claim but, rather, "filed a declaratory judgment requesting the court to render their opinion." *Id.* at 4. While Nationwide has not formally denied the Deimunds' claim, this does not absolve Nationwide of its admitted obligation to treat the Deimunds fairly and in a reasonable fashion when investigating their claim.

Courts have found that similar circumstances constituted sufficient evidence of vexatious refusal. *See, e.g. Allen,,* 753 S.W.2d at 620-1, *citing Berry v. Federal Kemper Insurance Co.,* 621 S.W.2d 948, 954 (Mo. Ct. App. 1981) (denial of liability without stating any ground for denial is sufficient to warrant the submission of vexatious damages); *Victor*, 772 S.W.2d at 831-33 (upholding finding of vexatious delay where insurer delayed payment for eighteen months); *Handly v. Lyons*, 475 S.W.2d 451, 461 (Mo. Ct. App. 1971) (upholding finding of vexatious delay when insurer delayed paying policy benefits for six weeks); *Travelers Indemnity Co. v. Woods*, 663 S.W.2d 392, 397 (Mo. App. 1983) (submissible case made when insurer refused to pay on home fire based on a suspicion the insured caused the loss and its expert proved to not be believable by the jury).

The Deimunds further argue that Nationwide's failure to report the Deimunds' claim to the prosecuting attorney or Department of Insurance pursuant to Missouri statute raises doubts about the reasonableness of Nationwide's belief that the Deimunds committed arson or fraud. Section 320.082 provides that every "insurance company doing the business of fire insurance within this state which shall have reason to believe that any fire loss reported to it is the result of arson or incendiarism shall forthwith report the same along with all relevant facts thereof to the prosecuting or circuit attorney of the city or county in which said fire loss occurred." Mo. Rev. Stat. § 320.082. Similarly, an insurance company which "believes that a fraudulent claim is being made" is required to report the claim to the Department of Insurance, thereby triggering an independent investigation. Mo. Rev. Stat. § 375.992.

Although Nationwide attempts to deny the Deimunds' claim based on the semantics of Defendants' statement of material facts, they do not genuinely dispute that Nationwide failed to contact the appropriate authorities regarding the Deimunds' claim. Indeed, Mr. Noah testified in his deposition that Nationwide did not contact any public agency to report Mr. Noah's findings. (Doc. 43-11 at p. 13.) Mr. Noah explained that, while he found evidence of an incendiary fire, he could not identify the perpetrator of the fire. *Id.* He further testified that it was not within the scope of duties as a retained expert for Nationwide to report arson to authorities. *Id.* The fact that Nationwide did not report its conclusion that the fire was intentionally set pursuant to Missouri statute is relevant in determining the reasonableness of its investigation and allegation that the Deimunds intentionally set the fire.

Finally, the Deimunds argue that Nationwide's position in its Motion that the fire was intentionally set by James or Sheldon Deimund is a "material change in position" from its allegations in the Complaint that the fire was set by James or Mary Deimund. They contend that

Nationwide should be estopped from relying on this theory due to the inconsistency with its original theory.  As Nationwide points out, the Complaint alleges that Defendants are barred from recovery under the Policy because Nationwide's investigation of the claim revealed that "Defendants, or someone at their direction, started the fire..."  (Doc. 1 at p. 3.)  Because Nationwide's allegation in the instant Motion that Sheldon started the fire is consistent with the Complaint, Nationwide will not be estopped from arguing such.

In sum, considering all the facts in this matter, a jury could find Nationwide's actions vexatious.  Most notably, Nationwide failed to communicate to the Deimunds Mr. Noah's classification of the fire's cause as incendiary; failed to report this finding to the proper authorities as provided by Missouri statute; and did not file the instant action for declaratory judgment for ten months after being advised that the fire's cause was incendiary.  Thus, Nationwide's Motion for Partial Summary Judgment will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Nationwide Affinity Insurance Company of America's Motion for Partial Summary Judgment (Doc. 39) is **denied**.

/**s**/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of June, 2018.