UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| NATIONWIDE AFFINITY INSURANCE COMPANY OF AMERICA, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 1:16CV298 ACL<br>) |
| JAMES DEIMUND and<br>MARY DEIMUND, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Presently pending before the Court are the following motions filed by Defendants James Deimund and Mary Deimund ("Deimunds"): Motion for Judgment as a Matter of Law as to the Declaratory Judgment/Breach of Contract Claim (Doc. 78); and Motion for New Trial (Doc. 79).

## Background

On December 28, 2016, Nationwide Affinity Insurance Company of America ("Nationwide") filed a Complaint for Declaratory Judgment, seeking a determination of its rights and obligations under a policy of insurance that was issued to the Deimunds, policy number HOA 0019933591-8 ("Policy"). (Doc. 1.) On or about January 19, 2016, the Deimunds' building and personal property located at 11394 Billings Road, Ste. Genevieve, Missouri 63670-7131 sustained damages as a result of a fire. At the time of the fire, Mary Deimund was at work several miles from the home, and James Deimund was reportedly a few blocks away at a friend's home. The Deimunds' adult son, Sheldon Deimund, was home when the fire started. The

1

Deimunds claim the fire was accidental and started near or around the fire place. The Deimunds submitted a claim to Nationwide for insurance proceeds under the Policy.

Nationwide, in the Complaint, alleged that the Deimunds were barred from recovery under the Policy due to the application of the following two Policy provisions: (1) an exclusion precluding coverage for intentional loss applied because Nationwide's investigation of the claim led to a reasonable belief that the Deimunds, or someone at their direction, started the fire; and (2) the Deimunds breached the "concealment or fraud" condition, in that they concealed and/or misrepresented material facts with respect to the cause of the claimed loss.

The Deimunds filed a Counterclaim for breach of contract and vexatious refusal to pay. Nationwide moved for Partial Summary Judgment on the Deimunds' counter-claim for vexatious refusal to pay. (Doc. 39.) The Court denied the Motion. (Doc. 48.)

This action was tried before a jury from July 23, 2018, through July 26, 2018. The Court denied the Deimunds' oral motions for judgment as a matter of law at the close of Nationwide's case and at the close of all the evidence. On July 26, 2018, the jury returned its verdict in favor of Nationwide on Nationwide's claim for Declaratory Judgment. On August 3, 2018, the Court issued a Judgment in accordance with the jury's verdict. (Doc. 76.) The Court declared that, pursuant to the verdict, the Policy does not provide coverage for the Deimunds' fire loss of January 19, 2016. The Court also entered judgment in favor of Nationwide on the Deimunds' claims for breach of contract and vexatious refusal to pay, given the jury's verdict on Nationwide's claim for declaratory judgment.

On August 23, 2018, the Deimunds filed the instant Motion for Judgment as a Matter of Law and Motion for New Trial. The Court will address these motions in turn.

**Discussion**

As an initial matter, the Deimunds have requested oral argument as to their Motion for Judgment as a matter of Law and Motion for New Trial. (Doc. 87.) The undersigned finds that the instant motions can be resolved on the record before the Court. Thus, the request for oral argument will be denied.

**I.      Motion for Judgment as a Matter of Law**

The Deimunds claim that Nationwide failed to make a submissible case that either James or Mary Deimund were involved in the fire. They further argue that Nationwide failed to prove that a third party did not start the fire.

In response, Nationwide argues that it presented substantial evidence that the fire was intentionally set, the Deimunds and Sheldon were the only ones with an opportunity to set the fire, and the Deimunds had motive to set the fire. Nationwide further argues that it made a submissible case as to the elements required to prove that James and Mary Deimund intentionally concealed or misrepresented the fire's cause.

A motion for judgment as a matter of law under Rule 50(b) should be granted only if the jury's verdict is utterly lacking in evidentiary support. *In re Prempro Prods. Liab. Litig.,* 586 F.3d 547, 571 (8th Cir. 2009). When deciding a Rule 50 motion, the Court must construe the evidence most favorably to the prevailing party and draw all inferences in his favor, denying the motion "if reasonable persons could differ as to the conclusions to be drawn from the evidence." *Western Am., Inc. v. Aetna Cas. and Sur. Co.*, 915 F.2d 1181, 1183 (8th Cir. 1990). The Court may not make credibility determinations or weigh the evidence. *In re Prempro,* 586 F.3d at 572 (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

In this case, the jury was instructed as follows:

> On Plaintiff's claim for declaratory judgment, your verdict must be for Nationwide if you believe:
>
> *Either*:
>
>> the January 19, 2016 fire was intentionally set by James or Mary Deimund, or at the direction of James or Mary Deimund; *or*
>>
>> James or Mary Deimund intentionally concealed or misrepresented any material fact or circumstance with respect to the cause of the January 19, 2016 fire.

(Instruction No. 9, Doc. 74 at p. 10) (emphasis added). As such, Nationwide was required to establish only one of the alternatives set forth in the verdict directing instruction.

As to the first alternative, the evidence most favorable to the verdict establishes that the fire was intentionally set. Specifically, Nationwide's origin and cause investigator, Philip Noah, testified that the fire originated in three separate and unconnected areas inside the home. He found that the probable source of the fire's ignition was the intentional application of open flame to combustible items available in the origin areas. Mr. Noah concluded that the fire's cause was incendiary.

Nationwide also presented sufficient evidence from which the jury could find that the fire was set by or at the direction of the Deimunds. It was undisputed that no one other than James, Mary, and Sheldon Deimund had access to the inside of the home on the morning of the fire, and that there was no evidence of a break in. Consequently, only James, Mary, and Sheldon Deimund had the opportunity to set the fire inside of the home. The evidence showed that Mary Deimund was at work the morning of the fire, and Sheldon was at the home the entire morning.

Nationwide argued that the location of James Deimund when the fire started is subject to dispute. Mr. Deimund testified that he left the home at or around 6:00 a.m. to eat breakfast at a local restaurant with friends. He acknowledged that he was only at the restaurant for

4

approximately thirty minutes. Mr. Deimund testified that he next went to the home of friends—Mike and Denice Gross—to rotate his tires in their garage after picking up the keys to the Gross home from another friend, Darren Joines. Mr. Deimund explained that he had made arrangements to pick up the keys to the Gross home because Mr. Gross would not be home to let him in. The Gross home is located only a few blocks from the Deimund home. Mr. Deimund stated that he was rotating his tires in the Gross garage when he was notified about the fire, at which time he immediately drove home. The Deimunds introduced the deposition testimony of Denice Gross at trial. Ms. Gross testified that she saw Mr. Deimund in her garage on the day of the fire. She stated that Mr. Deimund did not arrive at her home until the late morning, before she left for work around 12:15 or 1:00 p.m. Nationwide argued that this evidence showed that Mr. Deimund's whereabouts from approximately 6:30 a.m. to the time firefighters observed Mr. Deimund at the scene of the fire at 9:00 a.m. is in dispute.

The Deimunds, citing *Simpson v. Johnson's Amoco Food Shop, Inc.*, 36 S.W.3d 775, 777 (Mo. Ct. App. 2001), argue that Nationwide is bound by the uncontradicted testimony of its own witness. Because Nationwide called Mr. Deimund to testify regarding his whereabouts, the Deimunds contend that Nationwide cannot advance a contrary theory. Mr. Deimund's testimony, however, is not uncontroverted. The testimony of the Deimunds' own witness, Ms. Gross, was inconsistent with that of Mr. Deimund regarding the time Mr. Deimund was at the Gross garage. In light of this fact, and the fact that the Gross home is only a few blocks from the Deimund home, the jury could have reasonably found that Mr. Deimund had ample time and opportunity to set the fire.

Further, firefighter Chris Breckenfelder, who was present at the scene of the fire, testified that he overheard Mr. Deimund asking Fire Chief Mueller on more than one occasion whether

the fire marshal would be called to investigate the fire. Mr. Breckenfelder was the first firefighter to arrive at the scene. Contrary to the Deimunds' argument that the fire originated in or around the fireplace on the main floor, Mr. Breckenfelder testified that he observed minimal fire on the main floor, and that the most intense fire was in the basement. Mr. Breckenfelder's testimony provides additional support for Nationwide's theory that Mr. Deimund was involved in setting the fire.

Mr. Breckenfelder's testimony also revealed inconsistencies in Sheldon's testimony. Sheldon testified that he was sleeping in the basement and awoke when he smelled smoke and then saw flames in the basement. He testified that he immediately called 911 and ran outside upon discovering the fire. Mr. Breckenfelder, however, testified that Sheldon's hair was wet and he was dressed as if he were going to work when he saw Sheldon at the scene of the fire.

Finally, Nationwide presented significant evidence showing that the Deimunds had a financial motivation to set the fire. Specifically, at the time of the fire the Deimunds had medical debts in excess of $20,000, past due mortgage debt of $14,000, and monthly expenses that exceeded their income. James Deimund was not working at the time of the fire or in the years leading up to the fire. Mary Deimund earned less than $2000 a month working at a daycare. Although the Deimunds dispute Nationwide's characterization of their finances, the undisputed facts support Nationwide's theory of a financial situation dire enough to constitute a motive for setting the fire.

The fact that the Deimunds' house was for sale at the time of the fire also lends support to Nationwide's theory of the Deimunds' motive. Approximately six months prior to the fire, the Deimunds placed a for sale sign on the property. Although the Deimunds testified that they did not really intend to sell the house and placed the for sale sign to protest the actions of the

6

neighborhood association, the jury was free to reject this explanation as incredible. Notably, the Deimunds had looked at other houses prior to the fire, including the house where they lived at the time of the trial. In fact, Nationwide paid the rent for twelve months following the fire to allow the Deimunds to live at this home.

The Deimunds contend that Nationwide's own evidence demonstrated that if the fire was incendiary, then the fire must have been started by Sheldon. They argue that if the fire was started by Sheldon, then there was coverage under the Policy.

Circumstantial evidence can constitute competent and substantial evidence. *See Boyd v. Civil Serv. Comm'n of City of St. Louis,* 657 S.W.2d 83, 86 (Mo. Ct. App. 1983) (fact may be proven by direct or circumstantial evidence). "'Circumstantial evidence is evidence which does not directly prove a fact in issue, but gives rise to a logical inference that the fact exists.'" *State v. Howery,* 427 S.W.3d 236, 245 (Mo. Ct. App. 2014), quoting *State v. Fitzgerald,* 778 S.W.2d 689, 691 (Mo. Ct. App. 1989). Circumstantial evidence and the permissible inferences from such evidence can be sufficient to prove essential facts and support a verdict. *Erdman v. Condaire, Inc.,* 97 S.W.3d 85, 91 (Mo. Ct. App. 2002).

The evidence presented in this case is sufficient to establish an inference that Sheldon did not act alone in setting the fire but, rather, with the knowledge and assistance of James Deimund. As previously discussed, there are inconsistencies regarding James Deimund's whereabouts immediately prior to the fire, and James Deimund made suspicious statements at the scene of the fire. Further, James and Mary Deimund had the financial motive to start the fire and collect the insurance proceeds. Sheldon, who was working full-time and earning a substantial income at the time of the fire, lacked a similar motive.

As with any type of evidence, the circumstantial evidence must be substantial, and it must establish the desired inference with such certainty as to cause it to be the more reasonable and probable of the conclusions to be drawn. *Resnik v. Blue Cross and Blue Shield of Missouri,* 912 S.W.2d 567, 571 (Mo. Ct. App. 1998). Here, the more reasonable and probable conclusion from the evidence presented by Nationwide is that James Deimund was involved in setting the fire. The jury had the opportunity to evaluate the credibility of the witnesses, and was free to disbelieve the Deimunds' testimony. Nationwide presented sufficient evidence to support the verdict on the theory that the Deimunds set the fire or caused it to be set.

Nationwide contends that it also met its burden of presenting substantial evidence to support the alternative theory of the verdict directing instruction: that the Deimunds misrepresented or concealed the cause of the fire. The Deimunds dispute this. Because the Court has found sufficient evidence to support the jury's verdict on the basis that the Deimunds set the fire or caused it to be set, there is also sufficient evidence to support the alternative theory that the Deimunds concealed or misrepresented the cause of the fire.

Accordingly, the Deimunds Motion for Judgment as a Matter of Law will be denied.

**II.     Motion for New Trial**

The Deimunds next request a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure as to both the declaratory judgment/breach of contract claim and vexatious refusal to pay claim.

The Court notes as an initial matter that the jury in this case did not reach the vexatious refusal to pay claim pursuant to the Court's instructions because they found in favor of Nationwide on the declaratory judgment claim. If the Court finds that the Deimunds are entitled

to a new trial on the declaratory judgment claim, then the Deimunds are also entitled to have the jury consider the vexatious refusal claim at that time.

Under Federal Rule of Civil Procedure 59(a)(1)(A), "[a] new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). A miscarriage of justice does not result whenever there are inaccuracies or errors at trial; instead, the party seeking a new trial must demonstrate that there was prejudicial error. *Buchholz v. Rockwell Int'l Corp.*, 120 F.3d 146, 148 (8th Cir. 1997). It is almost entirely within the discretion of the trial court whether to grant a new trial. *See* Fed. R. Civ. P. 59(a); *Orthoarm, Inc. v. Forestadent USA, Inc.*, No. 4:06–CV–730–CAS, 2008 WL 4681385, at *2 (E.D. Mo. Oct. 21, 2008) (citing *Belk v. City of Eldon*, 228 F.3d 872, 878 (8th Cir. 2000)).

The Deimunds raise the following arguments in support of their Motion for New Trial: (1) Nationwide failed to make a submissible case; (2) the Court erred in precluding evidence that Nationwide failed to comply with V.A.M.S. 320.082; (3) the Court erred in allowing the hearsay testimony of Matt Miller; (4) the Court erred in allowing the hearsay testimony of Mr. Breckenfelder; (5) the Court erred in allowing Nationwide to argue an adverse inference from the Deimunds' failure to call individuals with James Deimund the morning of the fire; and (6) the verdict was against the weight of the evidence. The undersigned will address these claims in turn.

### A. Submissible Case

As discussed with regard to the Deimunds' Motion for Judgment as a Matter of Law, Nationwide presented sufficient evidence to support the jury's verdict. As such, the Deimunds' Motion for New Trial will be denied as to this point.

### B. Evidentiary Rulings

Erroneous evidentiary rulings warrant a new trial if the errors were sufficiently prejudicial that a new trial would likely produce a different result. *Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft,* 434 F.3d 1081, 1098 (8th Cir. 2006).

#### 1. V.A.M.S. 320.082

At trial, the Deimunds sought to introduce evidence that Nationwide failed to comply with the provision of V.A.M.S. § 320.082 requiring insurance companies having "reason to believe that any fire loss reported to it is the result of arson or incendiarism" to report such to the prosecuting or circuit attorney of the city or county in which the fire loss occurred. Nationwide filed a motion in limine to exclude all testimony and evidence related to the fact that the Deimunds were not arrested, charged, or convicted of any crime or arson-related offense relative to the fire. The Court granted the motion in limine.

The Deimunds now argue that the Court committed prejudicial error in excluding this evidence. They contend that they did not seek to introduce any evidence of the lack of arrests, charges, or convictions, and that Nationwide's failure to comply with the statute supported the Deimunds' claim that Nationwide's belief that the fire was intentionally set was unreasonable.

The Court's decision granting Nationwide's motion in limine was based on Eighth Circuit precedent that evidence that criminal charges were not brought is inadmissible in a civil action arising out of the same events as the criminal charges would have been. *See Goffstein v. State Farm Fire & Cas. Co.*, 764 F.2d 522 (8th Cir. 1985); *Kostelec v. State Farm Fire & Cas. Co.*, 64 F.3d 1220 (8th Cir. 1985). The Deimunds' argument that they did not seek to introduce evidence that criminal charges were not brought is unavailing. The act of reporting possible "arson or incendiarism" to the prosecuting or circuit attorney is so intertwined with the filing of

charges that admission of this evidence would necessarily open the door to the fact criminal charges were not brought. Courts have found that "admission of evidence of an insured's non-prosecution on charges of arson in a civil action to recover on a fire insurance policy would be cause for a mistrial and would be reversible error." *Rabon v. Great Southwest Fire Ins. Co.,* 818 F.2d 306 (4th Cir. 1987); *Kelly's Auto Parts, No. 1, Inc. v. Boughton*, 809 F.2d 1247 (6th Cir. 1987); *Galbraith v. Hartford Fire Ins. Co.,* 464 F.2d 225 (3rd Cir. 1972); *Krueger v. State Farm Fire and Casualty Co.*, 510 N.W.2d 204 (Minn. Ct. App. 1993); *American Home Assurance Co. v. Sunshine Supermarkets*, 753 F.2d 321 (3rd Cir. 1985).

The Court discerns no evidentiary error, much less an error that so prejudiced the Deimunds to require a new trial. Thus, the Motion will be denied as to this point.

### 2. Matt Miller's Testimony

Mr. Miller is one of the volunteer firefighters who responded to the fire at the Deimund home. Mr. Noah testified that he talked with Mr. Miller and included information obtained from Mr. Miller in his report. In addition, Jacklyn Seymour, an investigator for Nationwide, testified at trial that she talked to Mr. Miller and prepared a file note reflecting information she obtained from Mr. Miller. Mr. Miller's relevant statements are summarized as follows: that positive pressure ventilation ("PPV") was not initiated until after the fire was extinguished; that James Deimund found another house he wanted to purchase but had been unable to obtain financing because of bad credit; and that James Deimund stated that he may be able to pay cash for a new house prior to the fire.

Nationwide called Mr. Miller to testify at trial. Mr. Miller denied making the statements to Mr. Noah and Ms. Seymour. Nationwide attempted to impeach Mr. Miller regarding his prior statements, including statements Mr. Miller allegedly made during a conversation with

11

Nationwide's trial counsel. The Court sustained the Deimunds' objection. Nationwide's counsel terminated her examination of Mr. Miller, subject to recall. Nationwide did not ultimately recall Mr. Miller.

Nationwide did introduce, over objections from the Deimunds, testimony from Mr. Noah and Ms. Seymour regarding the conversations each had had with Mr. Miller. The Court also permitted, over the Deimunds' objection, the admission of Ms. Seymour's file notes and Mr. Noah's report documenting the conversations with Mr. Noah.

The Deimunds argue that none of this hearsay evidence was admissible to support Nationwide's contention that the fire was incendiary or that James started the fire. The Deimunds claim that, although the evidence could be considered for the purposes of judging the reasonableness of Nationwide's conduct with regard to the vexatious refusal to pay claim, Nationwide made no effort to verify any of the statements allegedly made by Mr. Miller. Finally, the Deimunds argue that the statement made to Ms. Seymour are inadmissible to defend against the Deimunds' vexatious refusal claim because they were not available when Nationwide made its decision to deny coverage on December 6, 2016.

After holding a conference with the attorneys outside the presence of the jury, the Court concluded that Mr. Miller's statements were admissible not to prove the truth of the matters asserted, but to show Nationwide's knowledge at the time the Deimunds' claim was denied. This evidence was relevant in defending against the Deimunds' vexatious refusal to pay claim. Mr. Miller's statements were presented through the testimony of Mr. Noah and Ms. Seymour to show that Nationwide had a reasonable belief that there was no coverage because the fire was intentionally set by or at the direction of the Deimunds. The records of Ms. Seymour and Mr. Noah were also admitted for the purpose of explaining Nationwide's decision and conduct. *See,*

*e.g. Wolff v. Brown*, 128 F.3d 682, 685 (8th Cir. 1997) (holding "internal documents relied upon by the employer in making an employment decision are not hearsay," and are "admissible because they help explain...the employer's conduct); *Hardie v. Cotter & Co.*, 849 F.2d 1097, 1011 (8th Cir. 1988) (finding customer complaints were not hearsay and were properly admitted because the complaints demonstrated the employer's state of mind when it decided to discharge its employee).

The Deimunds' argument that Nationwide did not further investigate Mr. Miller's statements is refuted by the evidence presented at trial. Similarly, their claim that Mr. Miller did not make the statements at issue until after Nationwide made the decision to file the instant action lacks merit. The testimony presented a trial reveals that Nationwide representatives spoke with Mr. Miller on multiple occasions. Mr. Miller contacted Nationwide immediately after the fire to report the fire as a suspicious loss. As to Ms. Seymour's conversation with Mr. Miller, Nationwide points to a claim note of Ms. Seymour's introduced at trial supporting that she spoke with Mr. Miller on December 6, 2016, rather than December 7, 2016. As such, Mr. Miller's statements were relevant to Nationwide's defense of the Deimunds' vexatious refusal to pay claim.

With the admission of each statement, the Court provided a limiting instruction informing the jury it was not to consider the statement for the truth of the matter asserted. The Court also submitted Jury Instruction No. 7, which stated that those limiting instructions were still in effect. (Doc. 74 at p. 8.) The instruction stated that "[y]ou may consider that evidence only with respect to whether you believe Nationwide refused to pay James and Mary Deimund's claim for insurance without reasonable cause or excuse. You may not consider that evidence with respect to the claim for declaratory judgment." *Id.* Additionally, the Court provided a handwritten note

on Ms. Seymour's claim notes that again reiterated the limiting instruction regarding the use of the exhibit during deliberations.

The Court discerns no evidentiary error, much less an error that so prejudiced the Deimunds to require a new trial. The Deimunds' Motion for a New Trial based upon this ground is denied.

### 3. Chris Breckenfelder's Statements

The Deimunds next argue that the Court committed prejudicial error in allowing the hearsay testimony of Mr. Breckenfelder. Mr. Breckenfelder testified at trial that PPV was used before the fire was completely extinguished. The Deimunds argue that this testimony was significant, because it was contrary to Mr. Noah's testimony that Mr. Breckenfelder told him that PPV was not used until after the fire was extinguished. Mr. Noah assumed that PPV was not used until after the fire was extinguished in reaching his conclusion that the fire was incendiary. The Deimunds contend that it was prejudicial error to permit Nationwide to use the hearsay statements of Mr. Breckenfelder.

Nationwide responds that it was entitled to use Mr. Breckenfelder's prior inconsistent statement for impeachment. Nationwide further argues that Mr. Noah did not solely rely on Mr. Breckenfelder's statement. Rather, Mr. Noah testified that he also spoke with Mr. Miller and Chief Mueller, both of whom confirmed that PPV was used after the fire was extinguished in the basement.

The Court finds that any error in allowing the admission of Mr. Breckenfelder's hearsay statement regarding the use of PPV was not prejudicial. The firefighter witnesses in this case testified that the purpose of PPV is to remove the smoke from the structure with the use of large fans. Both parties' experts explained that PPV is not used until the fire has been extinguished in

14

order to avoid spreading an active fire. Additionally, such a use of PPV can disrupt the normal flow of the fire and impact an origin and cause investigation. Mr. Noah testified that he considered the statements of not only Mr. Breckenfelder, but also Mr. Miller and Chief Mueller in assuming PPV was not applied until after the fire was extinguished. Mr. Miller testified at trial that PPV was not used until after the fire was extinguished. Mr. Noah addressed the issue of the timing of the use of PPV extensively, and addressed the effect of Mr. Breckenfelder's trial testimony. Mr. Noah ultimately dismissed the significance of any inconsistencies in Mr. Breckenfelder's statements. The jury was free to weigh the evidence.

The Court finds no error that so prejudiced the Deimunds to require a new trial. The Deimunds' Motion for a New Trial upon this ground is denied.

### 4. Adverse Inference

The Deimunds claim that the Court erred in allowing Nationwide to argue an adverse inference from the Deimunds' failure to call individuals who were with James the morning of the fire.

The following occurred during Nationwide's counsel's closing argument:

> Remember, Mr. Deimund, he said he left his house at 5:50, 6:00 o'clock right after his wife, went to have breakfast. Did they bring anyone in here from his breakfast clan? No.
> And then he said, Well, and then I stopped and got—had to pickup— well, I left early because I was going to go rotate my tires. At 6:30 in the morning he goes and picks up a key from somebody who, of course, doesn't come in here and say, yeah, I gave him the key. That guy wasn't here.
> And then—
> [DEIMUNDS' COUNSEL]: I would object, Your Honor. These—the witnesses she's talking about are independent witnesses. They're equally available to her as they are to us.
> THE COURT: Okay. Proceed, counselor.

(Doc. 90 at p. 10.)

A trial court's failure to sustain an objection to a party arguing the negative inference, resulting from opponent's failure to produce a vital witness to case where witness was equally available to both parties, constitutes prejudicial error. *Leehy v. Supreme Express & Transfer Co.* 646 S.W.2d 786 (Mo. 1983). The Deimunds argue that the witnesses in question were equally available to Nationwide and, therefore, allowing Nationwide's adverse inference argument was prejudicial error entitling the Deimunds to a new trial.

Assuming Nationwide's counsel's argument constituted a negative inference and that the witnesses were equally available to both parties, allowing the argument does not constitute prejudicial error. Mr. Deimund testified that he ate breakfast with friends from approximately 6:00 a.m. to 6:30 a.m. on the morning of the fire. Testimony from the "breakfast clan" witnesses would not have accounted for Mr. Deimund's whereabouts from 6:30 a.m. until the fire started around 8:30 a.m. As such, these witnesses were not "vital" to the Deimund's case. Further, Nationwide's counsel abandoned this argument after the Deimunds objected, and the Deimunds requested no further relief. Accordingly, prejudicial error did not result from Nationwide's counsel's statements during closing argument. The Motion is denied as to this point.

### C. Weight of the Evidence

The Deimunds argue that the jury's determination was against the weight of the evidence. They incorporate the arguments set forth in their Motion for Judgment as a Matter of Law.

In reviewing a motion for a new trial on the ground that the jury's verdict is against the weight of the evidence, the Court is free to weigh the evidence for itself and grant a new trial even where substantial evidence exists to support the verdict. *Dominium Mgmt. Servs., Inc. v. Nationwide Housing Group*, 195 F.3d 358, 366 (8th Cir. 1999). "Ultimately, the district court must determine if there will be a miscarriage of justice if the jury's verdict is allowed to stand."

*Id.* (citing *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)). A miscarriage of justice occurs when there is insufficient evidence to support the verdict. *Douglas County Bank & Trust Co. v. United Financial Inc.*, 207 F.3d 473, 478 (8th Cir. 2000).

As to Nationwide's declaratory judgment claim, the Court concludes that the verdict was not against the weight of the evidence and did not result in a miscarriage of justice for the reasons discussed above. Because the jury properly did not reach the Deimunds' vexatious refusal to pay claim, the Deimunds' claims of error related to the vexatious refusal claim are moot. The Deimunds are not entitled to a new trial.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants James Deimund and Mary Deimund's Request for Oral Argument (Doc. 87) is **denied**.

**IT IS FURTHER ORDERED** that Defendants James Deimund and Mary Deimund's Motion for Judgment as a Matter of Law as to the Declaratory Judgment/Breach of Contract Claim (Doc. 78) and Motion for New Trial (Doc. 79) are **denied**.

　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　ABBIE CRITES-LEONI
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of December, 2018.